### In the Matter of FLORIDA EAST COAST RAILWAY COMPANY, Debtor.

### No. 4827–J.

United States District Court, S. D. Florida.

June 28, 1954.

Russell L. Frink, Jacksonville, Fla., for trustee.

John B. L'Engle, Jacksonville, Fla., for F. E. C. Ry. Co.

William D. Mitchell, Mitchell, Capron, Marsh, Angulo & Cooney, New York City, and Giles J. Patterson, Patterson, Freeman, Richardson & Watson, Jacksonville, Fla., for St. Joe Paper Co.

Adair, Kent & Ashby, Jacksonville, Fla., for Trustees of the Estate of Alfred I. duPont.

H. Plant Osborne, Osborne, Copp & Markham, Jacksonville, Fla., for Guaranty Trust Co. of N. Y. and Arthur E. Burke, First Mortgage Trustees.

J. Turner Butler, Jacksonville, Fla., and J. T. G. Crawford, Crawford & May, Jacksonville, Fla., and C. H. Holcomb, Miami, Fla., and Willard P. Scott, Oliver & Donnally, New York City, for S. A. Lynch interests.

Appleton, Rice & Perrin, New York City, and Bedell & Bedell, Jacksonville, Fla., for The Bank of The Manhattan Co. and J. Bryson Aird, Trustees, 1st and Refunding 5% bonds.

Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for F. K. Conn, and others.

Walton, Hubbard, Schroeder, Lantaff & Atkins, Miami, Fla., for W. G. Welbon, and others.

Edward W. Bourne, Alexander & Green, New York City, and Richard B. Gwathmey, Washington, D. C., and Charles Cook Howell, Gen. Counsel, Wilmington, N. C., and Howell & Howell, Jacksonville, Fla., for A. C. L. Rr. Co.

Walter H. Brown, Jr., New York City, and Fleming, Jones, Scott & Botts, Jacksonville, Fla., for S. A. L. Ry. Co.

Henry L. Walker, Gen. Sol., Southern Railway, Washington, D. C., for So. Ry. Co.

PER CURIAM.

This matter came on to be heard before this Court on the 21st day of June, 1954, all parties having been notified to appear and present their views as to what action this Court should now take in the light of the judgment and mandate of the Supreme Court of the United States, 347 U.S. 298, 74 S.Ct. 574, 576.

Counsel representing the holders of the 5% Refunding Bonds of the Railway Company asked the Court to now adhere to and confirm its order herein of March 11, 1952, modified only in two particulars, namely, (a) fixing a new effective date for said order; and (b) because of the death of Scott M. Loftin named in the order of March 11, 1952, as a Reorganization Trustee in this cause and an Equity Receiver in cause No. 757-Equity, directing that the turnover should be made by John W. Martin as sole surviving Reorganization Trustee to John W. Martin as sole Equity Receiver. Such action was objected to only by the Atlantic Coast Line, which through its counsel asked the Court to grant its motion filed herein, dated May 26, 1954, to now approve the plan approved by the Interstate Commerce Commission October 25, 1951, and certified to this Court November 7, 1951.

The Supreme Court considered only one question, namely, whether the Commission had statutory power to certify the plan which involved absorption of

the Florida East Coast Railway and acquisition of all its property, where the Florida East Coast Railway had neither initiated the plan or agreed to it. It held that because one of the carriers involved had never agreed to the plan and had no part in initiating it, the plan was unauthorized. The majority opinion says:

"The sole question for decision in this case is whether the Interstate Commerce Commission has the power under § 77 of the Bankruptcy Act to submit a plan of reorganization to a district court whereby a debtor railroad would be compelled to merge with another railroad having no prior connection with the debtor. Answer to this problem depends on understanding of a long legislative history. * * *

"The crucial question, therefore, is whether this merger plan meets the statutory requirements. Since it does not, as we have found, because it is sought to be imposed by Commission fiat rather than proposed by the merging carriers, it matters not that the security holders might ultimately accept it if it were put to them for a formal vote. The kind of Hobson's choice, more or less, to which security holders are put when voting on a merger plan is not to be put to them on a plan initiated by the Commission rather than by their own corporation. And so, if a plan does not satisfy the basic conditions which circumscribe the Commission's power, it has a congenital defect, and any interested party can object to its attempted effectuation."

At the conclusion of its opinion the Supreme Court ruled, without reservation, that the judgment of the Court of Appeals is reversed and "the case is remanded to the District Court for further proceedings in accordance with this opinion." The effect of that decision and order was to wholly, not partially, nullify the judgment of the Court of Appeals; to completely abrogate the proposed plan of reorganization; and to grant leave to this Court to further proceed in any manner authorized by law and consistent with the Supreme Court's opinion. The decision renders the plan presently proposed congenitally and irrevocably defective because not initiated by both carriers involved.

More than two years ago this Court dismissed this bankruptcy proceedings in the exercise of its discretion under § 77, sub. e and § 77, sub. g of the Bankruptcy Act, 11 U.S.C.A. § 205, subs. e, g; the latter subsection dealing with unreasonable delay in reorganization. The situation today is even more aggravated. More than two additional years have passed, without progress, and in the light of present conditions the Court again finds, with added reason, and after having examined the recommendations of the Interstate Commerce Commission, that unreasonable delay has occurred. The plan for an internal reorganization agreed to by the holders of the 5% Refunding Bonds, and filed in the cause, opens the way for a speedy internal reorganization in the equity foreclosure case.

The motion of the Atlantic Coast Line to put into effect the plan just held by the Supreme Court to be unauthorized by law and congenitally defective would disregard the mandate, not obey it.

The proof offered by the Atlantic Coast Line respecting its alleged option to buy the stock of the Florida East Coast Railway is wholly irrelevant. No such option does or ever has existed. The Atlantic Coast Line concedes that no price at which the option could be exercised has ever been agreed on. The option is and always has been a nullity. No attempt has ever been made to exercise it.

The attempt to prove that the trustee under the Mary Flagler Bingham Will has adopted the present illegal plan discloses no corporate action by the Florida East Coast Railway.

Furthermore, as this Court interprets the decision of the Supreme Court, the origin of the plan was such as to preclude its being made effective. The situation is and has been that the

plan is a nullity. This Court holds that, to be valid, a merger plan submitted by the Interstate Commerce Commission must not only have the consent of the carriers affected, but must be *initiated* by them.

In Schwabacher v. United States, 334 U.S. 182, 68 S.Ct. 958, 92 L.Ed. 1305, the question in the case of a voluntary merger was whether the Commission could properly refuse to take jurisdiction of the claims of preferred stockholders demanding par value and accrued dividends for cumulative preferred stock. In the course of the opinion the Court had occasion to comment on the meaning and effect of the provisions of the Interstate Commerce Act so adopted in 1920. The majority opinion by Mr. Justice Jackson quotes Section 5 at length and describes it as providing for voluntary mergers. He said, 334 U.S. at page 193, 68 S.Ct. at page 964:

"It authorized approval by the Commission of carrier-initiated, voluntary plans of merger or consolidation."

In his dissenting opinion Mr. Justice Frankfurter, referring to the fact that Congress had been asked in 1920 to eliminate waste and inefficiency by providing for compulsory combinations, and to do away with the system of operation of railroads by State corporations, said:

"Congress rejected both demands. \* \* \* It left mergers of separate railroad properties into larger units to the will of their private owners, merely lodging a veto power in the Commission".

While the question in the Schwabacher case is not involved here, the fact that the Court gave to Sections 1 and 5 of the Interstate Commerce Act, added in 1920, the same meaning that we now do, and held that initiation and formulation of a merger plan by the carriers was as vital to its invalidity as consent, is quite material.

The power of initiation gives the carriers the power to choose all the terms of the merger. A merger plan initiated by the Commission would give the carriers only the power to agree to the Commission's idea of what the merger should be, which is a very different thing. As the Supreme Court has said, that kind of Hobson's choice is not to be put to these security holders.

This Court is also of the opinion that the attempted "adoption" of the plan comes too late, and that the invalidity of the Commission's plan is now *res judicata.* Being congenitally defective, there are no means of activating it.

Also the Court is not satisfied that initiation and approval of the merger or absorption plan by the Florida East Coast Stockholders, even had it been timely, would have been sufficient in this case. It is clearly established by the record that the stock of the debtor has no value, and that this stock has never had any value during the pendency of these proceedings. The assets of the debtor are substantially less than the claims of creditors to be satisfied from those assets. There is no possible equity for stockholders after payment of the proved debts. It am loath to believe that any action taken by the holders of this worthless stock would be of any significance. Both the Interstate Commerce Commission and this Court have held that the 5% bondholders are the equitable owners of the Railway, and it would be intolerable to give the worthless stock power to control its disposition. In any event, whatever action the stockholders may have taken following the submission to the Supreme Court was too late to alter the status of the plan that was considered by that Court and found to be congenitally defective.

Furthermore, on January 25, 1941, the Florida East Coast Railway Company filed an answer to the petition filed on behalf of the First and Refunding 5% Bonds for the institution of proceedings under Sec. 77, in which petition it was alleged that the debts of the Florida East Coast Railway exceeded its assets. That answer admitted the asset deficiency. It also asked the Court to relieve the Florida East Coast Railway "of any duty under Sec. 77 to file a plan of reorganization".

The Court's order of January 31, 1941, states in paragraph 21, "the debtor is hereby relieved from any duty under Sec. 77 of the Bankruptcy Act to file any plan of reorganization".

The Florida East Coast Railway Company, therefore, conceded long ago that its stock was worthless and asked this Court to make an order relieving it from participation in the formulation of a reorganized plan under Sec. 77, which the Court did.

The effect of those proceedings was to eliminate the Florida East Coast Railway Company and its stockholders, at their request, as factors in the preparation or adoption of any reorganization plan.

For these and other reasons the debtor railway should go back into equity receivership, so that the speedy plan of reorganization there available may be consummated by the 5% Bondholders, who are the equitable owners of the property, and so that any person or persons desiring to buy the road shall be offered a fair opportunity to bid for it.